```
              UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF NEW HAMPSHIRE
```

<u>Nanceann Marie Law</u>

    v.                                    Case No. 17-cv-453-JL

<u>Nancy A. Berryhill, Acting</u>
<u>Commissioner, Social</u>
<u>Security Administration</u>


**REPORT AND RECOMMENDATION**

Pursuant to 42 U.S.C. § 405(g), Nanceann Law moves to reverse the Acting Commissioner's decision to deny her application for Social Security disability insurance benefits, or DIB, under Title II of the Social Security Act, 42 U.S.C. § 423. The Acting Commissioner, in turn, moves for an order affirming her decision. For the reasons that follow, this matter should be remanded to the Acting Commissioner of the Social Security Administration ("SSA") for further proceedings.

**Standard of Review**

The applicable standard of review in this case provides, in pertinent part:

> The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .

42 U.S.C. § 405(g). However, the court "must uphold a denial of social security disability benefits unless 'the [Acting Commissioner] has committed a legal or factual error in evaluating a particular claim.'" Manso-Pizarro v. Sec'y of HHS, 76 F.3d 15, 16 (1st Cir. 1996) (per curiam) (quoting Sullivan v. Hudson, 490 U.S. 877, 885 (1989)).

**Background**

The parties have submitted a Joint Statement of Material Facts. That statement, document no. 14, is part of the court's record and will be summarized here, not repeated in full.

Law was born on May 3, 1960. Thus, the SSA considers her to have turned 55 on May 2, 2015. See Administrative Transcript (hereinafter "Tr.") 6. Law last worked in October of 2012, when her one-year contract as a strategic-planning consultant was not renewed. In the Disability Report she filed with the SSA, she reported that her contract was not renewed as a result of performance issues, which she described as resulting from her being "in a fog most of the time." Tr. 168. Law has been diagnosed with pachymeningitis,[1] fibromyalgia,[2] anxiety disorder

---

[1] Pachymeningitis is "[i]nflammation of the dura mater." Stedman's Medical Dictionary 1403 (28th ed. 2006). The dura mater is "a tough fibrous membrane forming the outer covering of the central nervous system." Id. at 592.

[2] Fibromyalgia is "[a] common syndrome of widespread soft-tissue pain accompanied by weakness, fatigue, and sleep disturbance." Stedman's, supra note 1, at 725.

not otherwise specified, irritable bowel syndrome, memory loss/disturbance, asthma, and a cognitive impairment.

Law applied for DIB in April of 2014. In her application, she claimed that she became disabled on January 30, 2013, as a result of: Lyme disease (post treatment), fibromyalgia, chronic pain and fatigue, chronic cough/asthma, COPD/shortness of breath,[3] pachymeningitis, bilateral fluctuating hearing loss, sleep apnea, hystadelia,[4] and severe allergies to various environmental conditions, foods, and dyes. The record includes one opinion on Law's physical residual functional capacity ("RFC"),[5] which was prepared in August of 2014 by Dr. Hugh Fairley, a non-examining state-agency consultant who reviewed Law's medical records. Dr. Fairley, in turn, found that Law had the RFC to perform light-duty work, with some postural and environmental limitations.

---

[3] COPD is an "[a]bbreviation for chronic obstructive pulmonary disease." Stedman's, supra note 1, at 439.

[4] Law used the term "hystadelia" in her Disability Report, which the SSA construed as a reference to "histadelia," see Tr. 61, but the court has been unable to find a definition for either term in the medical dictionaries it regularly consults.

[5] "An applicant's residual functional capacity 'is the most [he or she] can still do despite [his or her] limitations.'" Purdy v. Berryhill, 887 F.3d 7, 10 n.2 (1st Cir. 2018) (quoting 20 C.F.R. § 416.945(a)(1), a regulation governing claims for supplemental security income, but which is worded identically to 20 C.F.R. § 404.1545(a), a cognate regulation governing claims for DIB).

3

The SSA denied Law's application.  Thereafter, she received a hearing before an Administrative Law Judge ("ALJ").  About a week before Law's hearing, the SAA received 251 pages of Law's medical records, covering a period from 2007 through 2015.  See Tr. 527-777.  There is no suggestion in the record that Dr. Fairley had reviewed any of those records when he assessed Law's RFC in August of 2014.

After Law's hearing, the ALJ issued an unfavorable decision in which he found that Law: (1) had three severe physical impairments (asthma, fibromyalgia, and obesity) but had no severe mental impairments; (2) did not have an impairment or combination of impairments that met or medically equaled the severity of any of the impairments listed in the applicable SSA regulations; (3) had the residual functional capacity to perform her past work as a buyer-planner; and (4) also had the RFC to perform the jobs of office worker, information clerk, and telephone clerk/ordering clerk.

In support of his RFC assessment, the ALJ indicated that he gave great weight to Dr. Fairley's August 2014 opinion on Law's physical RFC.[6]  However, while the ALJ made nearly a dozen references to the medical evidence that was submitted to the SSA just before Law's hearing, see Tr. 78, 79, 82, 83, he did not

---

[6] But, the ALJ also found that Law had several limitations in addition to those that Dr. Fairley had identified in his opinion, including an environmental limitation based on her asthma and an additional postural limitation.  See Tr. 84.

4

acknowledge that Dr. Fairley had not reviewed that evidence, nor did he address the question of whether any of that evidence was material to assessing Law's limitations or materially changed the record on which Dr. Fairley had based his opinion.

In any event, based on the findings described above, the ALJ determined that Law had not been under a disability from January 30, 2013, through April 22, 2016, which was the date of the ALJ's decision.

Law appealed the ALJ's decision. The SSA's Appeals Council ("AC") adopted some parts of it and disagreed with others. Specifically, the AC disagreed with the ALJ's finding that Law had no severe mental impairments, and found that she had two: anxiety and depression. Even so, the AC adopted the ALJ's finding that Law did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. However, the AC revised Law's RFC by adding a limitation based upon its finding that Law suffered from anxiety and depression.[7] In light of its revision of RFC, the AC determined that Law could not perform her previous work but could perform the jobs of office worker, information clerk, and telephone clerk/ordering clerk. Unlike the ALJ, the AC said nothing about the amount of weight it gave Dr. Fairley's opinion

---

[7] The AC limited Law to performing jobs that involved "short and simple instructions." Tr. 6. He also reduced the ALJ's asthma-based environmental limitation.

but, like the ALJ, the AC did not address the question of whether any of the evidence that was submitted to the SSA just before Law's hearing was material to assessing Law's limitations or materially changed the record on which Dr. Fairley had based his opinion. Finally, the AC determined that the SSA regulations directed a finding that on the day the turned 55, i.e., May 2, 2015, Law's RFC rendered her disabled.[8]

## Discussion

A. The Legal Framework

To be eligible for disability insurance benefits, a person must: (1) be insured for such benefits; (2) not have reached retirement age; (3) have filed an application; and (4) be under a disability. 42 U.S.C. §§ 423(a)(1)(A)-(D). The only question in this case is whether the Appeals Council correctly determined that Law was not under a disability from January 30, 2013, through May 1, 2015, the day before she turned 55.

To decide whether a claimant is disabled for the purpose of determining eligibility for disability insurance benefits, an adjudicator is required to employ a five-step sequential evaluation process. See 20 C.F.R. § 404.1520. The steps are:

> 1) if the [claimant] is engaged in substantial gainful work activity, the application is denied; 2) if the [claimant] does not have, or has not had within the

---

[8] According to the SSA's Vocational Rule 2.06, see 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table 2, a person who is 55 or older, who can perform only light work, who is at least a high school graduate, but who does not have transferrable job skills, is presumptively disabled.

6

> relevant time period, a severe impairment or combination of impairments, the application is denied; 3) if the impairment meets the conditions for one of the "listed" impairments in the Social Security regulations, then the application is granted; 4) if the [claimant's] "residual functional capacity" is such that he or she can still perform past relevant work, then the application is denied; 5) if the [claimant], given his or her residual functional capacity, education, work experience, and age, is unable to do any other work, the application is granted.

Purdy v. Berryhill, 887 F.3d 7, 10 (1st Cir. 2018) (quoting Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001); citing 20 C.F.R. § 416.920 (outlining the same five-step process as the one prescribed in 20 C.F.R. § 404.1520)).

At the first four steps in the sequential evaluation process, the claimant bears both the burden of production and the burden of proof. See Purdy, 887 F.3d at 9 (citing Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001)); see also Bowen v. Yuckert, 482 U.S. 137, 146 (1987). She must prove she is disabled by a preponderance of the evidence. See Mandziej v. Chater, 944 F. Supp. 121, 129 (D.N.H. 1996) (citing Paone v. Schweiker, 530 F. Supp. 808, 810-11 (D. Mass. 1982)).[9] Finally,

> [i]n assessing a disability claim, the [Acting Commissioner] considers objective and subjective factors, including: (1) objective medical facts; (2) [claimant]'s subjective claims of pain and disability

---

[9] At step five, the burden of proof shifts to the Acting Commissioner, see Seavey, 276 F.3d at 5 (citing Arocho v. Sec'y of HHS, 670 F.2d 374, 375 (1st Cir. 1982)), but the Acting Commissioner's step-five determination is not at issue here, so there is no need to describe the mechanics of step five.

7

as supported by the testimony of the claimant or other witness; and (3) the [claimant]'s educational background, age, and work experience.

Mandziej, 944 F. Supp. at 129 (citing Avery v. Sec'y of HHS, 797 F.2d 19, 23 (1st Cir. 1986); Goodermote v. Sec'y of HHS, 690 F.2d 5, 6 (1st Cir. 1982)).

B. Law's Claims

Law claims that: (1) the ALJ and the AC erred at step three of the SSA's sequential evaluation process;[10] (2) the ALJ and the AC erred by relying on Dr. Fairley's opinion because that opinion was based upon an incomplete medical record; and (3) the AC erred by failing to find that the onset date for her disability was March 9, 2014.  Law's second claim has merit.

Law's second claim bears the following caption: "The [Acting] Commissioner's conclusion that Ms. Law was not disabled between January 30, 2013 and May 1, 2015 is not supported by substantial evidence, and the [Acting] Commissioner had the duty to develop the record to obtain that evidence."  Cl.'s Mot. to Rev. (doc. no. 9) 8.  The factual basis for Law's second claim is the medical evidence that was submitted to the SSA just before her hearing.  However, the legal basis for Law's second claim is somewhat difficult to discern.

---

[10] At several points in her step-three claim, Law refers to statements the ALJ made in the section of his decision in which he discounted statements she made about her symptoms, but the court does not understand her to be claiming that the ALJ erred in his evaluation of those statements.

In the heading to that claim, she invokes the SSA's duty to develop the record, and she cites Perry v. Colvin, in which Judge Laplante ruled that an ALJ committed an error, albeit a harmless one, by failing to obtain a particular piece of evidence, see No. 13-cv-229-JL, 2014 WL 4725380, at *2 (D.N.H. Sept. 23, 2014) (citing Gaudreault v. Astrue, No. 11-cv-73-JL, 2012 WL 2277907, at *6-7 (D.N.H. June 18, 2012)). But it is not clear how Perry applies to this case, because all the evidence that Law seems to fault the ALJ for failing to obtain was in the SSA's hands before her hearing and, as the court has noted, the ALJ cited some of that evidence in his decision. So, it would appear that the gravamen of Law's second claim is not a failure on the part of the SSA or the ALJ to obtain evidence. Rather, Law's second claim may only be construed reasonably as an assertion that the assessments of her RFC by the ALJ and the AC were not supported by substantial evidence because the ALJ and the AC relied on Dr. Fairley's August 2014 opinion, which was rendered without the benefit of the evidence that was provided to the SSA in February of 2016.

Turning to the applicable legal principles, Judge DiClerico has recently explained:

> A reviewing consultant's opinion that is based on a "significantly incomplete record" cannot be accorded "significant weight" and cannot provide substantial evidence to support an ALJ's finding. Alcantara v. Astrue, 257 Fed. Appx. 333, 334 (1st Cir. 2007). The ALJ bears the burden of determining and explaining whether missing evidence is material to assessing the

9

>  claimant's limitations. See Hughes v. Berryhill, [No. 17-cv-235-JD,] 2018 WL 791236, at *2 (D.N.H. Feb. 8, 2018) (citing Giandomenico v. U.S. Soc. Sec. Admin., [No. 16-cv-506-PB,] 2017 WL 5484657, at *4 (D.N.H. Nov. 15, 2017)).

Avery v. Acting Comm'r, Soc. Sec. Admin., No. 17-cv-443-JD, 2018 WL 2376507, at *4 (D.N.H. May 24, 2018). On the other hand:

> [A]n ALJ may rely on a consultant's outdated opinion if he determines that the evidence postdating the opinion did not materially change the record on which it was based. See Alcantara, 257 Fed. Appx. at 334; Bell [v. Astrue, No. 11-cv-45-PB, 2012 WL 124841, at] *8-9 [(D.N.H. Jan. 17, 2012)]. The record remains materially unchanged where the new evidence either reveals no greater limitations or is arguably consistent with the consultant's assessment. See Ferland v. Astrue, [No. 11-cv-123-SM, 2011 WL 5199989, at] *4 [(D.N.H. Oct. 31, 2011)] (internal citations omitted). <u>The burden is on the ALJ, however, to make that determination</u> and he must make it adequately clear. See Alcantara, 257 Fed. Appx. at 334 (ALJ erred in simply stating that "the record underwent no material change" without explaining his analysis); Snead v. Barnhart, 360 F.3d 834, 838 (8th Cir. 2004); Meldrem [v. Colvin, No. 16-cv-156-JL, 2017 WL 2257337, at] *2 [(D.N.H. May 23, 2017)]; see also Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991) (internal quotations and citations omitted) ("Because Social Security proceedings are not adversarial in nature, the Secretary had a duty to develop an adequate record from which a reasonable conclusion can be drawn.").

Giandomenico, 2017 WL 5484657, at *4 (emphasis added).

Here, the SSA received, and the ALJ examined, 251 pages of medical records on the eve of Law's hearing, records that Dr. Fairley did not review before he rendered the opinion to which the ALJ gave great weight. Yet, the ALJ did not undertake the analysis described in Avery and Giandomenico. That was an error. Law did not identify that error in her brief to the AC,

10

see Tr. 292-97,[11] and, perhaps as a result, the AC did not address Dr. Fairley's opinion at all, much less perform the analysis described in Avery and Giandomenico. However, Dr. Fairley provided the only opinion in the record on Law's physical RFC. Thus, unless the AC impermissibly based its RFC assessment on its own interpretation of the medical evidence, see Marino v. U.S. Soc. Sec. Admin., Comm'r, No. 17-cv-179-JL, 2018 WL 4489291, at *4 (D.N.H. Sept. 19, 2018) ("an ALJ may not rely on 'raw medical data . . . until its functional significance is assessed by a medical expert'") (quoting Giandomenico, 2017 WL 5484657, at *4), the AC had to have relied upon Dr. Fairley's opinion when it assessed Law's physical RFC. Therefore, the AC was obligated to evaluate the evidence that surfaced after Dr. Fairley gave his opinion, but it did not do so. That was an error.

As for the contents of the evidence at issue, Law identifies three individual medical records and one collection of records that, in her view, Dr. Fairley needed to consider before he could issue an opinion that qualifies as substantial evidence. See Cl.'s Mot. to Rev. (doc. no. 9) 9. The court

---

[11] Law's failure to raise that issue before the AC is of no moment, because "[i]n the context of social security cases, the Supreme Court held that "[c]laimants . . . need not [ ] exhaust issues in a request for review by the Appeals Council in order to preserve judicial review of those issues." Silva v. Berryhill, 263 F. Supp. 3d 342, 346 (D. Mass. 2017) (quoting Sims v. Apfel, 530 U.S. 103, 112 (2000)).

11

will readily admit that the evidence Law identifies seems relatively weak.  That is, it does not appear that the various diagnoses and reports to physicians that Law identifies would support greater limitations than the ones that Dr. Fairley identified in his opinion.  And, if that were the only evidence at issue, the court would consider recommending the rejection of Law's second claim on harmless error grounds.  See Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 656 (1st Cir. 2000) ("[A] remand is not essential if it will amount to no more than an empty exercise.").  But the court could not find that the errors made by the ALJ and the AC were harmless without performing the analysis that they should have done, and given the volume of medical records at issue here, remand is the better course of action.

Finally, because the court is recommending a remand based upon Law's second claim of error, there is no need to address her other two claims of error, and the court declines to do so.

## Conclusion

For the reasons detailed above, the Acting Commissioner's motion for an order affirming her decision, document no. 13, should be denied; Law's motion to reverse that decision, document no. 9, should be granted to the extent that the case is remanded to the Acting Commissioner for further proceedings, pursuant to sentence four of 42 U.S.C. § 405(g); and the clerk

of the court should be directed to enter judgment in favor of claimant and close the case.

Any objection to this Report and Recommendation must be filed within 14 days of receipt of this notice. See Fed. R. Civ. P. 72(b)(2). The 14-day period may be extended upon motion. Failure to file a specific written objection to the Report and Recommendation within the specified time waives the right to appeal the district court's order. See Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016); Fed. R. Civ. P. 72(b)(2).

_____
Andrea K. Johnstone
United States Magistrate Judge

October 29, 2018

cc:   Darlene M. Daniele, Esq.
      Robert J. Rabuck, AUSA